**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICAN    )
                             )
         v.               )      1:07-cr-43-SJM-1
                             )
DUSTAN DENNINGTON       )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District J.,

After a federal search warrant was executed at his residence, the Defendant, Dustan Dennington, was indicted and charged with receiving/attempting to receive and possessing/ attempting to possess computerized images of minors engaging in sexually explicit conduct.  Presently pending before me is the Defendant's motion to suppress all evidence found during the search of his house and computer as well as statements that he made to law enforcement officers in connection with that search.  This court has subject matter jurisdiction by virtue of 18 U.S.C. § 3231.  For the reasons set forth below, the motion will be denied.

**I.  BACKGROUND**

The search at issue was conducted pursuant to a warrant obtained by Special Agent James W. Kilpatrick of U.S. Immigration and Customs Enforcement ("ICE").  The warrant sought authority to search the Defendant's residence for instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2252 and 2252A.  The warrant attached and incorporated a lengthy list of items to be seized, including (among many other things),

> computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to:  visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in

child pornography or child erotica.

(*See* Search Warrant Attachment A [62-3] at ¶ 1.)

The central issue in this case is whether the Government established probable cause to support a search of the Defendant's computer.  In applying for the warrant, Agent Kilpatrick submitted an affidavit detailing information which the Government had obtained about the Defendant from three separate sources, discussed below.

### The Philadelphia Investigation

The first source of information outlined in Agent Kilpatrick's affidavit is information that was obtained in connection with an investigation in the Philadelphia area concerning the activities of one Chad Frank.  On September 30, 2003, ICE agents executed search warrants for two residences tied to Frank as well as one warrant pertaining to Frank's email accounts with America Online.  The warrants were the result of an extensive investigation into Frank's involvement in child exploitation activities.  Videotapes were discovered during the execution of these warrants which depicted Frank sexually abusing minors.

The ICE investigation revealed Frank's involvement in organizing informal "Boy Lovers" meetings for the purpose of meeting and attempting to establish relationships with boys.  According to Agent Kilpatrick's affidavit, the term "Boy Lover" or "BL"[1] is "a label chosen by men with a physical, emotional, and psychological attraction to prepubescent boys, who do not believe that loving relationships with boys are damaging, so long as the interests of the boys are respected."  (*See* Kilpatrick Affidavit [62-3] at ¶ 20 n. 1.)  The investigation also revealed Frank's involvement in soliciting pictures of boys and girls engaged in sexual activity and in offering to take photographs of children being abused according to the tastes of other pedophiles.  Eventually, Frank

---

[1] Sometimes the term appears in Agent Kilpatrick's affidavit at "Boylover" or "boylover."

was indicted for conspiring to produce, receive, and distribute child pornography, producing child pornography, receiving and distributing child pornography, and possessing child pornography.  Following his conviction he was sentenced in the Eastern District of Pennsylvania to an aggregate term of imprisonment of 420 months.

During the pendency of his case, Frank was furloughed for the purpose of cooperating with law enforcement officials by communicating online with other individuals he knew to be sexually interested in children.  Among those with whom Frank communicated was the Defendant, who used the internet moniker "weatherboy" and whom Frank identified as a member of Boy Lover.  According to Agent Kilpatrick's affidavit,

> 24.  Frank further advised agents that DENNINGTON had traveled from Erie, Pennsylvania to Philadelphia, Pennsylvania for a Boy Lover gathering, held and organized by FRANK in June or July of 2001 at a Howard Johnson's hotel.  During this gathering, an individual known as TJ (terkey jerky) surreptitiously videotaped the sexual exploitation of a minor.  The minor, age nine (9), was identified by law enforcement and has undergone psychological therapy.  However, the minor has been unable to provide details of the encounter.  CHAD FRANK has indicated that he believes that DUSTAN DENNINGTON has a copy of the video made by TJ of the sexual encounter with the nine (9) year old boy.

> 25.  FRANK also advised that DENNINGTON has a YF (young friend) who at the time FRANK was furloughed was approximately twelve (12) years old.  FRANK indicated that DENNINGTON's YF is his cousin Ryan, LNU.

(Kilpatrick Affidavit [62-3] at ¶¶ 24 and 25.)

### The Albany Investigation

The second component of information forming the basis for Agent Kilpatrick's probable cause showing concerns the activities of one Thomas Pidel in the Albany, New York region.  The latter information, in turn, was uncovered during the course of an investigation in New Jersey of "Regpay," a third-party billing and credit card aggregating company, which led to the discovery of tens of thousands of purchases of child pornography occurring in the first half of 2003 in association with certain websites.

Agent Kilpatrick's affidavit explains that, in September of 2003, the ICE Cyber Crimes Center forwarded to ICE field offices a list of subscribers to various child pornography websites. One of the subscribers to a particular child pornography website, www.sunshineboys.com, was identified as Pidel, who was then residing in Pine Hill, New York. Following his arrest in January of 2004, Pidel admitted to sexually molesting his nine year old nephew, producing a videotape of them engaging in sexually explicit conduct, and then knowingly distributing the same over the internet.

Ultimately, Pidel was indicted by a federal grand jury in the U.S. District Court for the Northern District of New York for various offenses related to the sexual exploitation of children, including the production, receipt and possession of child pornography. Pidel subsequently entered a guilty plea and provided substantial cooperation to law enforcement authorities relative to the investigation of other individuals engaged in the sexual exploitation of children.

As part of this cooperation, Pidel disclosed his involvement with other "Boylovers," which included contact through on-line chat rooms and meetings or gatherings where boys were molested. According to Agent Kilpatrick's affidavit, Pidel disclosed the following information to law enforcement:

a)   A group of "Boylovers", [sic] including PIDEL, who had met through the Internet using the chat rooms "boyloversunited" and "boycuddles", [sic] had camped at Indian rock campgrounds in New Jersey, during the last week of Summer 2003. Some of the adults present fondled boys during this camping trip.

b)   The "Boylovers" celebrated Thanksgiving 2003 at PIDEL's house in Pine Hill, New York. PIDEL stated that several members had sex with boys during this gathering.

c)   PIDEL told agents of other "boyloversunited" "meets" that took place between August 2003 and January 2004. One meet was at a Hampton Inn in Detroit. On the way home from Detroit, the boylovers visited Niagara Falls. Another meet was held at a Super 8 Motel in Hartford, Connecticut.

(Kilpatrick Affidavit [62-3] at ¶ 31.) Through a forensic examination of Pidel's computer, law enforcement officers were able to confirm that the Thanksgiving "boylovers" meeting occurred at the Belleayre Hostel in Pine Hill, New York from November 14-16,

2003, and that approximately ten men and several boys attended the meeting.

As a result of the information provided by Pidel, several seizures and/or arrests were made relative to offenses involving the sexual exploitation of minors. According to Agent Kilpatrick's affidavit, these included the following:

a)   On September 9, 2004, ICE agents in Albany New York executed a federal search warrant at the residence of EDWARD CARNES, 251 Congress street, Troy, New York 12180 and seized 3 suspected child pornography DVD's found secreted in the ceiling of CARNES' bedroom.

b)   On September 20, 2004, ICE agents in Newark, New Jersey arrested ROBERT PELLE for possession of child pornography and for traveling across state lines to engage minors in sexual activity. After waiving his Miranda rights, PELLE provided ICE agents with incriminating statements regarding his possession of images containing child pornography and the molestation of his thirteen-year-old adopted son. Additionally, PELLE admitted that he is currently engaged in a Boylover organization in which he has allowed other men to engage his son in sexual activity.

c)   On September 22, 2004, ICE agents in New York City arrested PATRICK SZYMANSKI of Brooklyn, New York for interstate travel with intent to engage in a sexual act with a juvenile.

d)   On September 28, 2004, ICE agents in Newark, New Jersey conducted an interview of JASON MARUSO, of Newtown, Pennsylvania. MARUSO waived his Miranda rights and gave consent for three computer hard drives to undergo forensic examination.

(Kilpatrick Affidavit [62-3] at ¶ 33.)

Insofar is the Defendant is concerned, Agent Kilpatrick's affidavit alleges that Pidel provided the following information:

34.   During an interview with ICE agents on October 21, 2004, PIDEL disclosed information about two individuals with whom he had contact regarding the trading of child pornography and the molestation of children. PIDEL indicated that one of the individuals, with screen names "weatherboy", [sic] "weatherfuck" and "weatherbitch", [sic] resided in the Erie, Pennsylvania area. PIDEL also told agents that "weatherboy" a/k/a "weatherfuck" frequently used Yahoo instant messenger to chat. They met through the chat room "boylove". [sic] PIDEL further stated that "weatherboy" is not gay but likes boys and was close with his then twelve year old cousin, Ryan LNU. According to PIDEL, "weatherboy" is employed and owns a house. "Weatherboy" has been to PIDEL's house.

35.   PIDEL stated that "weatherboy" has a young friend (YF), a boy with whom a Boylover shares a relationship, named Ryan, LNU who at the time was 13 years old. PIDEL believes that "weatherboy" is molesting Ryan, LNU. PIDEL also advised that "weatherboy" sells nude images on his web site, www.weatherboy.org. and may also provide "special interest

photographs" at additional costs.

(Application and Affidavit for Search Warrant [62-3] at ¶¶ 34 and 35.)

Agent Kilpatrick's affidavit explains that a search was conducted of Pidel's residence in January 2004, which led to the seizure of computers and the extraction of Pidel's Yahoo instant message chat logs. Multiple instant message chats were found to have occurred between Pidel and the Defendant between August 22, 2003 and January 8, 2004. The content of these messages confirmed the Defendant's interest in boys under the age of 14 and included graphic descriptions of his on-going sexual relationship with his then13-year old cousin Ryan.

**The Erie Investigation**

The third component of information forming the basis for Agent Kilpatrick's probable cause showing involves an investigation undertaken in Erie, Pennsylvania concerning the Defendant's on-line activities. This aspect of the investigation was performed primarily by Jessica Lynn, a detective assigned by the Erie County Detectives Bureau to investigate internet and computer related crimes against children.

On July 5, 2006, Agent Kilpatrick met with Detective Lynn for the purpose of enlisting Detective Lynn's assistance in the investigation of the Defendant's suspected online child exploitation activities. The following day, Detective Lynn created an undercover online profile of a 54-year old male interested in 7 to 10 year old boys. Detective Lynn then used her undercover persona to join the website "http://www.weatherboy.org," which was known to be hosted by the Defendant. Upon joining the website, Detective Lynn discovered that "http://www.weatherboy.org" was a pay site where one could view naked pictures of the Defendant. The website also offered made-to-order pornography.

On July 6, 2006 Detective Lynn received an email from the Defendant regarding a new posting on his website. Detective Lynn emailed the Defendant that same day

and inquired how she could view the images.  She also used the internet search engine
Google to run a search of the term "weatherboy" and discovered that "weatherboy.org,"
the Defendant's website, is described as depicting a "young boy who jerks off on
camera and webcam as well as nude photos".  [sic]  (Kilpatrick Affidavit [62-3] at ¶ 41.)
Detective Lynn subsequently made contact with the Defendant via Yahoo instant
messenger on July 7, 2006 and was informed by the Defendant that the images and
videos on weatherboy.org were of himself and no one else.

        As part of her investigation, Detective Lynn also accessed the Defendant's
Yahoo group, located at  "http://groups.yahoo.com/group/weatherboy."  On this site,
Detective Lynn observed numerous photos posted by members of the website depicting
the members' genitalia.  The Defendant's Yahoo group website also featured a link,
posted by an individual using the moniker "weatherfuck," to the Yahoo group
"geeks'n'glasses'n'nerds," which is located at "http://groups.yahoo.com/group/
geeksnglassesnnerds."  The latter group is described as "For the appreciation of nerdy
and geeky boys.  Especially wearers of glasses and red haired boys".  [sic]

        As part of her investigation, Detective Lynn became a member of "http://groups.
yahoo.com/group/geeksnglassesnnerds" on July 10, 2006.  Thereafter, she was able to
observe numerous images of suspected minor males exposing their genitalia, which
had been posted by the members of the site.  Detective Lynn copied to a disc nine
images which she felt depicted minors engaged in a lascivious display of their genitalia.
The disc was supplied to the U.S. Attorney's Office and forwarded to a pediatric
urologist for the purpose of determining whether any of the images depicted minors.
The pediatric urologist found it "highly likely" that five of the images involved minors.
(Kilpatrick Affidavit [62-3] at ¶ 46.)

        Thereafter, a federal grand jury subpoena was issued to Yahoo Inc. for
subscriber information regarding the email account "dustan@weatherboy.org," the
Yahoo identity "weatherfuck," and the home page "http://www.weatherboy.org."  The
subpoena also sought information concerning the sponsor of the

"geeksnglassesnnerds" group.  Although Yahoo was unable to provide any information as to the "geeksnglassesnnerds" group or the domain "www.weatherboy.org," it was able to confirm that the Yahoo login name "weatherfuck" and the email address "dustan@weatherboy.org" were both used by the Defendant.

**Additional Averments**

In addition to the foregoing information, Agent Kilpatrick's affidavit contained numerous averments outlining his own experience in investigating crimes relative to the sexual exploitation of children and child pornography.  Among other things, Agent Kilpatrick discussed some of the traits and/or habits known to be commonly exhibited by individuals involved in the production, procurement, trade, and/or transmission of child pornography, including the fact that such individuals "do not discard their material containing sexually explicit depictions of children and/or 'child erotica', [sic] but collect it over a long period of time and maintain this material in the privacy of their homes." (Kilpatrick Affidavit [2-3] at ¶7(i).)  Agent Kilpatrick's affidavit also discussed at length the role which home computers have come to play in the modern child pornography industry and how "the communication structure" which is now available via the internet is "ideal for the child pornographer."  (*Id*. at ¶ 9.)  It averred that the advantages of on-line communication "are well known" and have become "the foundation of commerce between child pornographers" (*id*. at ¶ 9) and "[t]he computer's ability to store images in digital form makes it an ideal repository for pornography."  (*Id*. at ¶ 10.)

Based on all of the foregoing facts, as well as other information, Agent Kilpatrick sought and obtained a warrant to search the Defendant's home for evidence of violations of 18 U.S.C. § 2252, relating in part to the receipt, distribution, or possession of material involving the sexual exploitation of children and 18 U.S.C. § 2252A, relating in part to the receipt, distribution, or possession of child pornography.  The warrant was executed on November 1, 2006, resulting in the seizure of several computer hard drives and the retrieval of multiple images of child pornography.

8

## II. DISCUSSION

Defendant's multi-faceted challenges to Agent Kilpatrick's search warrant basically center around the question whether the warrant application contained sufficient indicia of probable cause to believe that evidence of child pornography would be found on his computer.  Defendant contends that certain factual averments in Agent Kilpatrick's search warrant affidavit are inadequate to support a finding of probable cause because they are conclusory in nature.  As to other allegations in the affidavit, the Defendant contends the information is too stale to be of any probative value. Finally, the Defendant asserts that the affidavit omits material information which, if included, would have precluded a finding of probable cause by the magistrate judge. These challenges are interwoven throughout the Defendant's motion, which addresses separately the alleged deficiencies in the evidence obtained from the Philadelphia Investigation, the Albany Investigation, and the Erie Investigation.  Accordingly, our discussion of the Government's probable cause showing will be organized in like fashion.

A.

"Probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v. Gates,* 462 U.S. 213, 232 (1983).  The standards governing a probable cause determination are well-established:

> The task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him... there is a fair probability that contraband or evidence of a crime will be found in a particular place, and the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding" that probable cause existed.

*Gates,* 462 U.S. at 238-39 (quoted in *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (ellipsis in the original)).

In making this assessment, I confine my consideration to the facts that were before the magistrate judge, *i.e.*, the four corners of the affidavit, *United States v.*

*Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993), construing the affidavit in its entirety and in a common sense and non-technical fashion.   *Gates*, 462 U.S. at 230-31.  I also bear in mind that a magistrate judge's determination of probable cause is entitled to "great deference by reviewing courts."   *Id*. at 213.   *See also United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination.").  On the other hand, this general preference for warrants "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion."   *United States v. Mortimer*, No. 03-4174, 2005 WL 318650 at *1 (3d Cir. July 12, 2004) (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)).

**1.  The Philadelphia Investigation (Chad Frank**)

The Defendant's first challenge concerns information received from Chad Frank in connection with the Philadelphia investigation, particularly Agent Kilpatrick's averment that "Frank has indicated that he believes that Dustan Dennington has a copy of the video made by TJ of the sexual encounter with the nine (9) year old boy." According to the Defendant, this statement lacks any probative value because it is stale and because the affidavit fails to provide any information from which a neutral and detached magistrate can judge the reliability of the statement.

In *Illinois v. Gates, supra*, the Supreme Court "incorporated the reasoning of its decisions in *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed.2d 637 (1969), into a totality-of-the-circumstances approach for evaluating informants' tips."   *U.S. v. Ritter*, 416 F.3d 256, n. 14 (3d Cir. 2005).  The *Gates* Court

> eschewed a stovepipe approach that treats an informant's "veracity,"
> "reliability," and "basis of knowledge" – criteria developed in *Aguilar* and
> *Spinelli* – as independent and necessary elements to crediting tips.

> Rather, in affirming the *Aguilar* and *Spinelli* criteria as relevant indicia of a tip's value, the Court established that the inquiry should treat these criteria as related issues, such that "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. 2317.

*Id*. Thus, "[u]nder *Gates*, courts are directed to evaluate probable cause based on 'all the circumstances set forth' in the warrant application." *United States v. Battershell,* 457 F.3d 1048, 1052 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 238). This approach "'permits a balanced assessment of the relative weights of all the various indicia of reliability' surrounding informants' tips." *Id*. (quoting *Gates*, *supra*, at 234). I find that, under the totality-of-circumstances approach, the affidavit provided sufficient indicia of Chad Frank's reliability and credibility such that the Magistrate Judge's reliance on Frank's information concerning the Defendant's possession of a pornographic videotape did not constitute a mere ratification of Frank's own bare conclusion.

Several factors in the affidavit support Frank's credibility as an informant. First, his identity was obviously known to the law enforcement community at the time he proffered the information about the Defendant; thus, this case does not present some of the difficulties often associated with anonymous tipsters. *See Battershell*, 457 F.3d at 1052 (information given by defendant's girlfriend and her sister was deemed highly reliable where, among other things, both women's identities were known to law enforcement such that they would be liable to repercussions if they lied about what they had seen). Moreover, Frank had provided the relevant information during the pendency of his own criminal prosecution when he was in federal custody and had every motivation to be helpful to law enforcement agents in order to obtain the best sentence possible. Frank would surely have realized that false information would not be useful to the Government and, therefore, providing false information would be contrary to his own best legal interests.

In addition, Frank's reliability is buttressed by the fact that he provided several pieces of information which were independently corroborated through another source.

For example, the fact that the Defendant is a BoyLover, that the Defendant traveled to meetings with other BoyLovers, that the Defendant communicated online with other BoyLovers, that he used the internet name "Weatherboy," that the Defendant had a "young friend" named "Ryan," that Ryan was the Defendant's relative, that Ryan was approximately 12 years old – all of these facts supplied by Frank were independently corroborated by information obtained through Thomas Pidel.  Defendant's on-line moniker "Weatherboy" was also independently corroborated by Detective Lynn.

Finally, the affidavit's averment that the Defendant was believed to have obtained a copy of the pornographic video made by "TJ" – though brief – is not made in a contextual vacuum, nor is it wholly conclusory in nature.  It is clear from the affidavit that Frank and the Defendant knew each other, both from on-line communications and through personal encounters.  Indeed, the affidavit suggests that they knew each other well enough that Frank could provide the Defendant's full name and the city where he resides, as well as certain details about the Defendant's "young friend."  It is also clear from the affidavit that both Frank and the Defendant were present at the BoyLover gathering in Philadelphia where the videotape was made and, in fact, Frank was the organizer of that meeting.  One can reasonably infer from this that Frank was in a position to have first-hand knowledge concerning the circumstances under which the Defendant would have come to possess the videotape.  Accordingly, the affidavit provides sufficient detail from which the Magistrate Judge could make an independent judgment concerning Frank's basis of knowledge.  Under the totality of the circumstances, Frank's credibility, reliability, and basis of knowledge were all adequately established in Agent Kilpatrick's affidavit.

Defendant also claims that the information Frank provided concerning his alleged possession of the pornographic videotape is too stale to be considered because the videotape was reportedly made in June or July of 2001, over five (5) years prior to the date on which Agent Kilpartrick presented his affidavit to the Magistrate Judge.  Our Circuit Court of Appeals has instructed that:

12

[t]he age of the information supporting a warrant application is a factor that must be considered in determining probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir.1993). If information is too old, it may have little value in showing that contraband or evidence is still likely to be found in the place for which the warrant is sought. *Id.* Age alone, however, does not determine staleness. "The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied sub nom.*, *Sanchez v. United States*, 466 U.S. 904, 104 S. Ct. 1679, 80 L. Ed.2d 154 (1984). "[W]hen an activity is of a protracted and continuous nature, 'the passage of time becomes less significant.'" *Id.* (quoting *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir.1973)). Thus, when the criminal activity has been going on continuously for years, staleness is of less concern. *Id.* at 1120 (staleness did not negate probable cause in drug trafficking conspiracy that had been going on for several years).

*United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

In this case, Agent Kilpatrick's affidavit shows that the Defendant's penchant for sexual exploitation of children has been on-going. *See United states v. Cintron*, 243 Fed. Appx. 676 679, 2007 WL 1805606 at **3 (3d Cir. June 25, 2007) ("[W]e have said that stale information can be refreshed with newer information that relates back to the subject of the older information.") In October of 2004, Thomas Pidel – a now convicted child molester and producer/distributor of child pornography – advised law enforcement officers that the Defendant was one of two individuals with whom he had had contact regarding the molesting of children and the trading of child pornography. Logs of Pidel's on-line chats with the Defendant confirm that, between August of 2003 and January of 2004, the Defendant was molesting his 13-year old "young friend," Ryan and that he openly professed a sexual interest in boys under the age of fourteen (14). During the 4-month period prior to the search of the Defendant's residence, Detective Lynn discovered that the Defendant was operating a pay site over the internet through which he would offer made-to-order pornographic images of himself which he advertised as depicting a "young boy who jerks off on camera and webcam as well as nude photos." And, on his "Yahoo" group website, the Defendant offered a link to a site advertised as "For the appreciation of nerdy and geeky boys. Especially wearers of glasses and red haired boys," which was later determined to contain pictures of minor

13

males exposing their genitalia.  Under these circumstances, the age of the
pornographic videotape which the Defendant was believed to have acquired in 2001 is
less significant because the Defendant's continuing manifestation of his sexual
proclivities make it more likely that his reported acquisition of child pornography in 2001
was not an aberrant event.  *See United States v. Eberle*, 266 Fed. Appx. 200, 206,
2008 WL 490598 at **5 (3d Cir. Feb. 25, 2008) (information in search warrant affidavit
indicating that defendants had uploaded child pornography onto the internet 3 and ½
years earlier was not stale where more recent phone conversation between defendant
and child pornography victim indicated the defendant's continuing interest in child
pornography and supported a belief that defendants still possessed child pornography
in their residence); *U.S. v. Shields*, 458 F.3d 269, 279 n. 7 (3d Cir. 2006) (information
suggesting a continuing offense is more durable than information of discrete offenses).

      Furthermore, the nature of the crime and type of evidence at issue here makes
staleness less of a concern.  Numerous courts in this circuit have rejected staleness
challenges in the context of child pornography cases, based on the well-accepted
premise (typically set forth in the supporting affidavit and based on the affiant's own
experience) that child pornographers tend to retain their contraband for significant
periods of time.  *See, e.g., U.S. v. Shields*, 458 F.3d 269, 279 n. 7 (3d Cir. 2006) ("We
have noted that collectors of child pornography often store their material and rarely
discard it.") (citation omitted); *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir.
2002 ("In conducting our staleness analysis in [*United States v.] Harvey*, we also
pointed to the fact that pedophiles rarely, if ever, dispose of child pornography.  Many
courts have similarly accorded weight to that fact. ... Presumably, individuals will protect
and retain child pornography for long periods of time because it is illegal and difficult to
obtain.") (internal citations omitted); *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d
Cir. 1993) (information in affidavit concerning delivery of suspected child pornography
occurring between 2 and 15 months prior to search was not stale where affiant averred,
based on his experience, that "pedophiles rarely, if ever, dispose of sexually explicit

14

material"); *United States v. Merz*, Criminal Action No. 07-199, 2009 WL 1183771 at *5 (E.D. Pa. May 4, 2009) (no staleness issue where affiant represented that child pornography collectors retain their collections for lengthy periods); *United States v. Bogle*, Criminal No. 08-335, 2009 WL 1064473 at *3 (W.D. Pa. April 20, 2009) (Diamond, J.) ("The Third Circuit has recognized that individuals rarely, if ever, dispose of child pornography.") (citing cases); *United States v. Workman*, Criminal Action No. 07-00040, 2008 WL 4093717 at *5 (E.D. Pa. Sept. 4, 2008) ("The observation that images of child pornography are likely to be hoarded by person interested in those materials in the privacy of their homes is supported by common sense and the cases. ....This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.") (quoting *United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996)); *United States v. Abraham*, No. Cr. 05-344, 2006 WL 1344303 at *3 (W.D. Pa. May 17, 2006) (Cohill, Senior J.) (approving inclusion in affidavit of expert opinion on the behavior of pedophiles to the effect that "pedophiles tend to keep any child pornography for long periods of time"). *Accord United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (delay of over three years in case charging defendant with possession of child pornography did not render information in warrant application stale).

The Defendant recognizes that the courts of this circuit have been (as he terms it) somewhat "lenient" when it comes to the age of information supporting a search warrant in child pornography cases. He contends, however, that the presumption that "individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain," *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002), has no relevance by today's standards, because "the emergence of the internet has changed the child pornography landscape dramatically." (Def.'s mot. to suppress [62] at pp. 5-6.) According to the Defendant, child pornography is so readily available via the internet these days that there is no longer any need for child pornographers to

15

horde their cashes.  Indeed, the Defendant maintains, forensic examinations of computers routinely reveal the presence of pornographic images that have been deleted – a fact which, he claims, is "known by any competent law enforcement officer." (Def.'s mot. to suppress [62] at p. 6.)

Whether or not the Defendant's hypothesis is valid, the fact of the matter is that the Magistrate Judge, in making her probable cause determination, was confined to an examination of Agent Kilpatrick's supporting affidavit and any reasonable inferences arising therefrom.  S*ee Illinois v. Gates*, 462 U.S. 230, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Nothing contained in Agent Kilpatrick's affidavit compels the presumption that child pornographers are prone to dispose of their contraband.  On the contrary, the affidavit sets forth Agent Kilpatrick's bona fides as a law enforcement officer experienced in the field of child pornography investigations and further establishes, based on his training, experience, and consultations with other law enforcement officers, that individuals engaged in the procurement of child pornography rarely dispose of their collections of sexually explicit materials.  The Magistrate Judge was entitled to rely on this representation in making her probable cause determination.  Nor do I find that the Defendant's conclusion is compelled as a matter of common sense.  Notably, the Defendant cites no case law supportive of the idea that modern-day child pornographers readily dispose of their materials and, as we have seen, the law of this circuit is quite to the contrary.

**2.     The Albany Investigation (Thomas Pidel**)

Defendant next challenges the probative value of the information provided by Thomas Pidel.  Defendant argues that this information "does not establish, or even

16

support a finding of probable cause to believe that Mr. Dennington's computer would contain child pornography."  (Def.'s mot. to suppress. [62] at p. 7.)

Fundamentally, the Defendant contends that Agent Kilpatrick's affidavit contains a material omission by failing to include certain information contained in the §5K1.1 motion filed by the Government in Pidel's case.  *See* Sentencing Memorandum of the United States, *United States v. Thomas Pidel*, Criminal Action No. 04-CR-0026 (TJM) (N.D.N.Y) (filed March 29, 2005) (attached to Def.'s mot. to supp. as Ex. B [62-4]).  In particular, the Defendant objects to the affidavit's failure to advise the issuing Magistrate Judge that, as of March 29, 2005 (the date on which the Government's § 5K1.1 motion was filed in Pidel's case), none of the seven computers which had been seized as a result of Pidel's cooperation had led to the discovery of any child pornography.  "Had this information been included in the affidavit," the Defendant argues, "that fact, combined with the fact that Pidel provided **no** information concerning Mr. Dennington's possession of child pornography, would have prevented any reasonable magistrate from finding that Pidel's information provided probable cause that Mr. Dennington's computer would contain child pornography."  (Def.'s Mot. to Supp. [62] at p. 9 (emphasis in the original).)

Putting aside for the moment the Defendant's allegation of a material omission, I will first address the Defendant's assertion that "Pidel provided **no** information concerning Mr. Dennington's possession of child pornography."  Notably, the affidavit states that Pidel identified the Defendant as one of two individuals with whom he had had contact "regarding the trading of child pornography and the molestation of children."  (*See* Kilpatrick Affidavit at ¶ 34.)  Defendant suggests that this statement should not be accorded any particular weight because it is merely "conclusory" and provides no details as to any discussions between Pidel and himself concerning child pornography.  Without such detail, the Defendant argues, the information failed to provide the Magistrate Judge with an adequate basis for determining probable cause.

I am not persuaded that the challenged averment lacks probative value.  It is true

17

that, viewed in isolation, the statement provides no details as to the specific content of the Defendant's communications with Pidel relative to the trading of child pornography. However, the statement must be viewed in the light of other information contained in the affidavit which establishes:  that the Defendant is a pedophile with an avowed sexual interest in young boys; that the Defendant has been sexually molesting his "young friend"; that he actively associates and networks with other BoyLovers who themselves are pedophiles, child molesters and collectors/distributors of child pornography; that the Defendant communicates over the internet with other pedophiles in chat rooms dedicated to the subject of "boy love"; that the Defendant was believed by a credible source to have previously acquired a videotape of a child being molested which was produced at a Boylover meeting that he himself attended; that the Defendant uses his computer to facilitate the transmission of pornographic materials, apparently including (among other things) images of himself masturbating, pictures of adult male genitalia, and a link to a website where images can be found of adult and minor males exposing their genitalia.  Based on the totality of these facts, it would not have been unreasonable or unduly speculative for the Magistrate Judge to infer that the Defendant's contact with Pidel "regarding the trading of child pornography" involved an expression of interest on the Defendant's part in obtaining and/or exchanging such material.

I next consider the Defendant's assertion that Agent Kilpatrick omitted material information from his affidavit in failing to advise the issuing Magistrate Judge that none of the seven computers seized as a result of information provided by Pidel had been found to contain child pornography.  Defendant contends that inclusion of this information would have undermined Pidel's reliability insofar as Pidel's information supported a search of the Defendant's computer.  (*See* Def.'s mot. to supp. [62] at pp. 8-9; Tr. of Oral Argument [65] at pp. 6-7.)

Consistent with the Supreme Court's holding in *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to a hearing to challenge the truthfulness of factual

18

statements made in a search warrant affidavit if the defendant makes a "substantial preliminary showing" that the affidavit contained a false statement or omitted material information, which statement or omission was made knowingly or with reckless disregard for the truth, and which information was material to the finding of probable cause. *See Franks*, 438 U.S. at 155-56; *U.S. v. Welch*, Criminal Action No. 05-618-1, 2007 WL 119954 at *2 (E.D. Pa. Jan. 7, 2007).  Assuming such a showing is made, the Defendant may prevail on his challenge to the search if, at the evidentiary hearing, he demonstrates by a preponderance of the evidence that the affiant "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and that "such statements and omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786, 87 (3d Cir. 2000) (citation omitted). *See also United States v. Eberle*, 266 Fed. Appx. 200, 204 (3d Cir. 2008).  An omission is made with reckless disregard for the truth 'when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Eberle*, 266 Fed. Appx. at 204 (citing *Wilson*, 212 F.3d at 783).

Here, the Defendant's *Franks* challenge is somewhat ambiguous and allows for differing interpretations.  As previously noted, it appears, at least in part, that the Defendant is attacking Pidel's reliability as an informant on the ground that he allegedly stated or implied certain facts which proved to be unfounded (i.e., that certain of his associates would be found to possess child pornography on their computers).  However, there is no evidence in this record to suggest that Pidel gave any demonstrably false information to law enforcement officials in connection with his cooperation[2] and, in fact, the record supports the opposite conclusion.  Indeed, it is

---

[2] For example, it is not clear from the Government's § 5K1.1 motion which seven computers were searched or who the owners were, or what precise information was obtained from Pidel (or other sources, for that matter) that resulted in the search of those computers.  Moreover, it is also clear from the § 5K1.1 motion that certain leads

clear from the affidavit that Pidel provided numerous facts which were independently corroborated, *to wit*:  that Pidel had hosted a  "boylover" meeting at Thanksgiving time in 2003 and that several boys were present during this gathering; that several of his "boylover" associates were involved in the sexual exploitation of children; that Pidel had contact with an individual using the on-line moniker "weatherboy" who resided in Erie; that "weatherboy" also used the screen name "weatherfuck"; that Pidel and "weatherboy" had communicated on-line via instant message chats; that "weatherboy" was interested in boys and was believed to be molesting his 13 year-old relative; that this "young friend's" name was "Ryan"; that "weatherboy" is employed and owns a house; that "weatherboy" had been to Pidel's residence; that "weatherboy" sells nude images on his webside, as well as "special interest photographs."   Under these circumstances, the hypothetical inclusion in the affidavit of information concerning the lack of child pornography on seven computers would not have meaningfully undermined Pidel's reliability, and therefore, it cannot be said that any reasonable person would have understood that a reviewing magistrate would have wanted to know about the seven computers.

Alternatively, one can interpret the Defendant's *Franks* challenge relative to Pidel as contending that inclusion of the information concerning the seven seized computers would have precluded a finding of probable cause by the issuing Magistrate Judge. The underlying implication of such an argument is that the lack of child pornography on the seven computers confiscated from Pidel's associates somehow makes it more likely that none would be found to exist on the Defendant's computer.  There are several problems with this argument.

For one, the argument assumes as a factual matter that there was no nexus between Pidel's information and the discovery of computer-related child pornography

---

provided by Pidel were still under investigation as of the time the motion was filed; thus, the motion does not purport to provide conclusive information about the truthfulness or utility of leads provided by Pidel.

among Pidel's associates.  However, this is belied by the § 5K1.1 motion, which references at least two instances in which Pidel's associates *were* linked to child pornography via computers or related storage devices.[3]  Thus, to the extent the challenged omission in Agent Kilpatrick's affidavit permitted the inference that some of Pidel's associates had obtained or possessed child pornography via their computers, the impression was not misleading.  This is particularly true given that, at the time the Government's motion as filed, several of the leads provided by Pidel were still under investigation, leaving open the possibility that additional cases might be developed involving the use of computers to obtain, trade, or store child pornography.

Second, purely as a matter of logic, the Defendant's premise is flawed:  that is to say, the fact that Pidel's information did not lead to the discovery of child pornography on other computers seized in unrelated cases does not mean that, based on the facts of this case, probable cause could not be found to exist.  This is particularly true in light of the fact that the § 5K1.1 motion provides no background information of any kind concerning the unsuccessful searches of the other computers.

Third, when the omitted information is considered in proper context, it does not reflect a reckless disregard of the truth, or even a "substantial showing" of such, as is necessary to warrant a hearing under *Franks*.  Read in its entirety, the Government's § 5K1.1 motion is not favorable to the Defendant's legal position.  Though the § 5K1.1 motion does not reference the Defendant specifically, it paints a grim picture of Pidel's "boylover" associates who, like Pidel, were involved in the sexual abuse of minors and/or the procurement of child pornography.  Given the Defendant's own status as a

---

[3]  For example, the motion makes specific reference to the fact that Pidel's cooperation had led to the recovery of child pornography located on a computer disk; presumably, a computer would have been used to transmit the images onto the disk. Elsewhere, the § 5K1.1 motion references the arrest of a New Jersey man who had been sexually abusing his own 12 year-old son as well as another 12 year-old boy. This individual had possessed child pornography on his computer, but the computer had previously been seized in connection with a separate criminal investigation by local law enforcement agents.

boylover with a preferential sexual interest in young boys, his apparent history of child molestation, and his links to Pidel through various boylover fora, the information in the § 5K1.1 motion, on balance, is not helpful to his case.  Consequently, when the omitted information is considered in proper context, its probative value is not so striking such that any reasonable person would appreciate that an issuing authority would want to be made aware of the information.  Nor does the omission of such information render the affidavit misleading to the point that it would support an inference of reckless indifference to the truth on the part of Agent Kilpatrick.  Thus, I find that no *Franks* hearing is required because I find that the Defendant has failed to make a substantial preliminary showing either that the omission in question created a materially false impression or that it was made with a reckless disregard to the truth.

Finally, to the extent the Defendant argues that Pidel's information provides no direct link to the presence of child pornography on his (the Defendant's) computer, his analysis misses the mark.  That is, the Defendant, focusing strictly on the information provided by Pidel, contends that none of Pidel's information established probable cause to search the Defendant's *computer*.  But again, the information provided by Pidel is just *one* component of the affidavit of probable cause and must not be read in isolation. The facts set forth in the search warrant affidavit provide adequate grounds from which one can reasonably infer that the Defendant has an interest in acquiring child pornography, that he has acquired such material in the past, and that there was a fair probability he would be in possession of such material at the time the search was conducted.

That being the case, the Magistrate Judge was entitled to draw reasonable inferences about the particular locations where such contraband would likely be found. "Probable cause can be, and often is, inferred by considering the type of crime, [and] the nature of the items sought ...  A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."  *United States v. Cancilla*, 280 Fed. Appx. 234, 236, 2008 WL

2175284 at **2 (3d Cir. May 27, 2008) (citing *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (alteration and ellipsis in the original).  Accordingly, a search warrant need not identify direct evidence linking a defendant to a particular location.  *Id*.

In any event, the affidavit here contained Agent Kilpatrick's representations as to the utility of computers and associated storage devices as ideal repositories of child pornography.  The issuing Magistrate Judge was entitled to rely on this information in making her probable cause determination.  *See United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."); *United States v. Merz*, Criminal Action No. 07-199, 2009 WL 1183771 at *4 (E.D. Pa. May 4, 2009) (same).  For all of these reasons, the Defendant's arguments challenging the probative value of information provided by Thomas Pidel is not persuasive.

### 3.    The Erie Investigation (Detective Lynn)

The Defendant also raises numerous attacks on that portion of Agent Kilpatrick's affidavit which concerns information provided by Detective Lynn.  It will be recalled that part of Agent Kilpatrick's affidavit discusses the investigation which Detective Lynn performed relative to the Defendant's own website and Yahoo group site in July of 2006.  According to the affidavit, Detective Lynn, posing online as a 54 year-old man interested in 7 to 10 year-old boys, joined the Defendant's website "weatherboy.org," which is described as a "young boy who jerks off on camera and webcam as well as nude photos."  Detective Lynn found that this site was a pay site where viewers could see naked pictures of the Defendant and acquire made-to-order pornography involving the Defendant.  Using her undercover persona, Detective Lynn had an on-line chat with the Defendant and was informed that the images and videos depicted himself and

23

noone else.  Detective Lynn also joined the Defendant's Yahoo group "weatherboy" and discovered that the site contained numerous photos posted by the group's members depicting the members' genitalia.  Detective Lynn discovered on the Yahoo group site a link (posted by the Defendant) to the website group "geeks'n'glasses'n'nerds" (hereinafter, "GGN").  The GGN site was described as "[f]or the appreciation of nerdy and geeky boys[,] [e]specially wearers of glasses and red haired boys" and contained a photo section where images could be found of minor males exposing their genitalia. Detective Lynn downloaded nine images which she felt depicted minors displaying their genitalia in a lascivious manner, and a pediatric urologist subsequently opined that it was "highly likely" that five of the nine images involved minors.

The Defendant challenges the affidavit's treatment of the foregoing information in two broad respects.  First, he contends that the affidavit omits material information concerning Detective Lynn's investigation of the GGN website.  Second, he argues more broadly that the information obtained from Detective Lynn fails to establish probable cause for the search of the his computer.  We address each of these arguments in turn.

a)    Defendant's *Frank's* Challenge

The Defendant contends that the affidavit recklessly omitted two material facts relative to Detective Lynn's investigation of the GGN link, *to wit*:  (i) the fact that the GGN website was devoted virtually exclusively to adult pornographic images and (ii) the fact that the illicit images of minors could be viewed only by members of the website and the Defendant was not a member.  In Defendant's view, the exclusion of this information (by either Agent Kilpatrick or Detective Lynn) constituted a reckless disregard of the truth and inclusion of it in the search warrant affidavit would have precluded a finding of probable cause.  As we have previously discussed, when a defendant shows by a preponderance of the evidence that a false statement necessary for the finding of probable cause was made "knowingly and intentionally, or with

24

reckless disregard for the truth," any evidence obtained as a result of the warrant must be excluded.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  To establish grounds for a *Franks* hearing, the defendant must make a "substantial preliminary showing" that the affidavit omits information material to a finding of probable cause and that the omission was made knowingly or with reckless disregard for the truth.  *See Franks*, 438 U.S. at 155-56; *U.S. v. Welch*, Criminal Action No. 05-618-1, 2007 WL 119954 at *2 (E.D. Pa. Jan. 7, 2007).

(i)

I will first address the Defendant's contention that the affidavit was materially flawed in failing to inform the Magistrate Judge that "virtually all of the photos on the geeks'n'glasses'n'nerds Yahoo group were adult pornography and the 9 images of suspected child pornography were only located after reviewing hundreds of images of adult pornography."  (Def.'s mot. to suppress [62] at p. 14.)  Indeed, the Defendant goes so far as to suggest that, of all the photos displayed at GGN, only five could possibly have contained child pornography since, according to the Defendant, the pediatric urologist "confirmed that only 5 images may have involved minors."  (Def.'s mot. to suppress [62] at p. 14), and these were "scattered among hundreds" of adult images.  (*Id.*)

The force of this argument necessarily depends on the accuracy of Defendant's underlying assertion that the photo content of GGN obviously and overwhelming consisted of pornographic images of adult men.  This issue is a matter of some dispute between the parties and, to appreciate the nature of that dispute, some background is necessary.

During at least a portion of her investigation of the GGN website, Detective Lynn ran a screen capture program which recorded her surveying parts of the website.[4]

---

[4] As defense counsel aptly describes it, the screen capture is akin to having a video camera aimed at Detective Lynn's computer screen such that the viewer can see exactly what Lynn saw as she was navigating the GGN site.

25

According to the Defendant, this screen capture shows that Lynn viewed the contents posted by 16 different members, which collectively involved some 282 thumbnail photos, certain of which were enlarged by her for better viewing.  The Defendant contends that the screen capture shows the content of the GGN photo section to be "focused on adult pornography."  (Def.'s mot. to suppress [62] at p. 11.)  The Defendant therefore faults the government agents for failing to disclose to the issuing Magistrate Judge "that the 9 suspected images of child pornography, which was pared down to 5 by [the pediatric urologist], were a tiny fraction of the images contained in the members area as the hundreds of other images in the members area of the group were of adult men in various stages of nudity and arousal." (*Id*. at pp. 11-12.)

The Government disagrees with the Defendant's characterization of what the screen capture shows.  The Government maintains that the overall content of the GGN photo section is more ambiguous than the Defendant allows and, in any event, cannot be described as being clearly and overwhelmingly dedicated to adult pornography.

Given this dispute, this Court accepted a copy of the screen capture video into evidence at the Defendant's request.  Having viewed the screen capture for itself, the Court disagrees with the Defendant's characterization of what Detective Lynn's screen capture shows.

To begin, the video shows that the website has a separate "photo section" consisting of some 25 separate albums, each of which contain numerous individual photo image files.  It appears that the albums are posted by members of the site, and each album is named according to a particular theme, such as "[A]rt [G]eeks," "Drunk Frat Boys," "Chubby Geeks and Nerdy Cubs," "[G]lasses/Lounging Nerds," "Nerds at the Computer," and the like.  The video shows Detective Lynn entering the photo section of the GGN site, at which point the first picture of each album appears in thumbnail form.  In performing her survey of the photo section, Detective Lynn opens

approximately 16 of the 25 albums.[5]  Each time she does so, the photo file contents of that particular album – or, in some cases, the first page of the photo contents – appears on the screen in thumbnail form.  Lynn then surveys certain of the photos by clicking on them so as to enlarge the photo, at which point the image can be discerned more easily.  Lynn does not survey all 25 albums on the screen capture video, nor does she enlarge every photo of the albums that are surveyed.  Therefore, a large portion of the photo files are not captured at all on the video, and most of the photos that are captured remain viewable only in thumbnail form.

That said, my viewing of the screen capture video does not support the conclusion that Detective Lynn had to comb over hundreds of photos in the GGN site in order to cull out a few images involving minors lasciviously displaying their genitals. Numerous photos are highlighted by Detective Lynn during the course of the screen capture video which appear to involve minor-aged males.[6]  As I have noted, most of the photos that are captured in the video remain viewable only in thumbnail form, making it difficult at times to definitively discern the age of the subject.  While a number of the thumbnail images depict individuals who appear unquestionably to be adult males, it also appears from the video that Detective Lynn did not enlarge or highlight every image which might have involved a depiction of child pornography.  For example, even from the imperfect thumbnail depictions it can be seen that certain of the presumably minor-aged subjects appear in multiple photos, only some of which are highlighted in the course of Detective Lynn's survey.  It should also be noted that the screen capture

_____

[5] The Defendant represents that Detective Lynn viewed the photo contents posted by sixteen different members of GGN.  It would be more accurate to say that she viewed the contents of 16 different albums, since it appears from the video that certain members have images posted in more than one album.

[6] It is not clear from the video – or from the record in general – whether any of the photos displayed on the screen capture video were among the nine images which Detective Lynn copied to a disc and supplied to the U.S. Attorney's office and which were later reviewed by the pediatric urologist.

27

video gives the impression that several of the albums being viewed by Detective Lynn had not been previously opened by her,[7] further belying the Defendant's suggestion that Lynn had to studiously pour over the entire photo content in order to find a few images that involved lascivious depictions of minors.  In sum, having viewed the screen capture video, the Court is left with the impression that the GGN site contained a fair number of images depicting minors lasciviously displaying their genitalia (or engaging in explicit sexual acts), and these images were not, as the Defendant suggests, mere "needles" buried in a figurative "haystack" of legal pornographic content.

Nor does the pediatric urologist's report in this case compel the conclusion that, at most, only five images on the entire GGN website could have qualified as child pornography.  The urologist was asked to review only nine photos believed by Detective Lynn to involve possible child pornography;[8] the urologist neither viewed nor rendered any opinion as to the other hundreds of images posted at GGN.  Thus, her report should not be viewed as a characterization of the overall content of the GGN website.  Moreover, as to the nine images which were reviewed, it is inaccurate to interpret the urologist's report as definitively concluding that only five of the images could have involved minors.  Her determination as to the five images involved a conservative analysis and a degree of scientific exactitude beyond that which is required to establish probable cause.  Because she could not predict with the same degree of exactitude the ages of the subjects depicted in the remaining four photos, she simply drew no

---

[7] The screen capture video shows that certain features of the GGN website appear in blue font, while others appear in purple font.  As the Defendant explains, the purple font is an indication that the website user has previously viewed that particular feature.  Thus, if an album or photo file name appears on the screen capture in blue font, one may assume it had not previously been clicked on by Detective Lynn.

[8] As I have noted, it remains unclear on this record which nine images she reviewed.

28

—

conclusions.[9]

    In sum, contrary to the Defendant's contention, it is not obvious from the screen
capture video that the photo content displayed at GGN was patently, and
overwhelmingly, dedicated to adult male pornography.  Accordingly, it cannot be said
that, in failing to describe the GGN site in the manner advocated by the Defendant,
Agent Kilpatrick and/or Detective Lynn omitted facts that any reasonable person would
know that a judge would want to know."  Because there has been no "substantial
preliminary showing" that the officers omitted material facts with reckless disregard for
the truth, no evidentiary hearing is require.[10]

                                                              (ii)

    I next consider the Defendant's contention that the affidavit omitted material
information in failing to inform the issuing Magistrate that he could not have accessed,
much less downloaded, any of the images contained in the photo section of the GGN
website because he was not a GGN member.  Defendant does not affirmatively
represent that he never joined the GGN web group, but he asks that we presume his

_____

    [9]  In analyzing the subjects of the photos, the pediatric urologist narrowed her
focus to five images involving males with incomplete pubic hair development (i.e. "stage
4").  Based on data correlating age to pubic hair development and showing that the
mean age of white males at stage 4 (even allowing for standard error of 0.18) is 15.07
years, she found it "highly likely" that the individuals depicted in the five photos (i.e.,
those with stage 4 development) were minors.  As to the remaining four photos, the
urologist rendered no opinion one way or the other concerning the probable ages of the
individuals depicted.  By implication, these individuals likely had full pubic hair
development, meaning that their status as minors could not be determined with the
same degree of certainty.
    Even so, it does not necessarily follow that the subjects of the four remaining
photos must have been adults.  The urologist's report appears to indicate that the
average age for full pubic hair development is approximately 16.5 to 17 years for all
boys.  (*See* Kilpatrick Affidavit, Ex. 1 [62-3].)  This would suggest that, even if the
subjects of the other four photos had reached full maturity (i.e., phase 5), they could
nevertheless have been under the age of 18.

    [10] As is discussed in more detail below, I also conclude that the omitted
information was not material to a determination of probable cause.

nonmembership based on the fact that the screen capture video shows the "members" section of the GGN website in purple font – meaning that it had been opened and, thus, viewed by Detective Lynn and, yet, there is no assertion in the affidavit that Defendant *is* a member of GGN.  Defendant reasons that Detective Lynn must have gained access to the "membership" section of the GGN site and, if in doing so she had been able to identify one of the members as the Defendant, that fact surely would have been stated in the affidavit.  Accordingly, Defendant concludes, we should presume from the absence of such information that Detective Lynn found no evidence indicating his membership in the GGN group.  It follows, the Defendant suggests, that he could not have accessed, much less downloaded, the images posted at GGN.

Here again, I conclude that the Defendant has not demonstrated grounds for a *Franks* hearing because, in my view, he has made no showing that the omitted information rendered the search warrant intentionally or recklessly false or misleading.  The fact that only members of GGN had access to the photo content posted there is made sufficiently clear by Agent Kilpatrick's averment that, "**[a]fter Detective Lynn became a member of [GGN]** on July 10, 2006, she observed numerous images of suspected minor males exposing their genitalia on the group site" and "[t]hese images were posted to the group site by members of the site."  (Kilpatrick Affidavit [62-3] at ¶ 44 (emphasis added).)  Nowhere does the affidavit state or imply that nonmembers would have access to these photos.

Moreover, the affidavit does not falsely suggest or imply that the Defendant was found by Detective Lynn to be a member of the GGN group site.  Rather, as the Defendant notes, the affidavit makes no representation at all in that regard and merely states (accurately) that the Defendant posted a link to the GGN site on his own Yahoo group web page.  The logical implication of this limited representation (as the Defendant himself notes) is that Detective Lynn uncovered no evidence confirming the Defendant's membership in the GGN group as of July 10, 2006.  Consequently, I am not persuaded by the Defendant's *Franks* challenge relative to the GGN website

because there has been no substantial preliminary showing here that the issuing Magistrate Judge was knowingly or recklessly misled by the challenged omissions in Agent Kilpatrick's affidavit.  Viewing the omitted information in context, I cannot say that its inclusion is so critical to the disabusal of a false or misleading impression that any reasonable person would have known that an issuing Magistrate Judge would require its inclusion in the search warrant affidavit.[11]

      b)    <u>Defendant's Challenges Regarding Probable Cause</u>

I now turn to the Defendant's second basic challenge concerning the information provided by Detective Lynn, which is his contention that none of the information concerning Lynn's investigation of the GGN group site established probable cause to believe that the Defendant's computer would contain images of child pornography. Given the attributes of the GGN website and his presumed lack of membership, Defendant argues, there was no probable cause to believe that he could have accessed, much less downloaded, any of the objectionable images obtained by Detective Lynn from the GGN photo section, nor was the Magistrate Judge entitled to rely on Detective Lynn's judgment that the objectionable images involved the "lascivious display of [the minors'] genitalia."  Since the content of the Defendant's own website ("weatherboy.org") and Yahoo group did not contain child pornography, the Defendant views Detective Lynn's investigation as utterly failing to establish probable cause for the search of his computer.

Having thus discounted the information obtained from Detective Lynn, the Defendant next argues that the remainder of information contained in Agent Kilpatrick's

---

[11] Nor do I find that the challenged omissions are material to a finding of probable cause.  As we discuss in more detail below, I find that the affidavit, even when read in the light that the Defendant advocates, provided the Magistrate Judge with a substantial basis for making her probable cause determination.

affidavit is insufficient to support the search of his computer.  Even if one accepts the information from Chad Frank and Thomas Pidel as showing his sexual interest in young boys, the Defendant argues, such information is insufficient to establish that the Defendant is a child pornographer.  In support of this point, the Defendant quotes the Second Circuit's decision in *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), wherein the court admonished that, "'It is an inferential fallacy of ancient standing to conclude that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely, or even largely composed of, members of group A.'"  544 F.3d at 122.  The *Falso* court went on to observe that, "[a]lthough offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court."  *Id*.

Defendant's arguments warrant several observations.  It must be noted, first, that the *Falso* court made its "inferential fallacy" pronouncement under circumstances that are materially distinguishable from those at issue here.  In *Falso*, the affidavit alleged only that the defendant "appeared" to have "gained or attempted to gain" access to a website that contained approximately eleven images of child pornography available to nonmembers and had been convicted 18 years earlier of a misdemeanor based on the sexual abuse of a minor.  There was no information provided in the affidavit to establish that the defendant had become a member or subscriber to the site.  "Absent any allegation that Falso in fact accessed the website at issue," the court wrote, "the question is whether Falso's eighteen-year old conviction involving the sexual abuse of a minor (or some other factor) provides a sufficient basis to believe that evidence of child pornography crimes would be found in Falso's home."  544 F.3d at 113.  The court concluded that the issuing judge had lacked a substantial basis for finding probable cause, although the search was nevertheless upheld under the good faith exception to the exclusionary rule.  *See id.* at 120-28.  Thus, *Falso* may be read as establishing the unremarkable proposition that a person's status as a pedophile (as demonstrated by an

32

18 year-old conviction involving the abuse of a minor), standing alone, does not establish probable cause to believe that the person possesses child pornography.  In this case, however, Agent Kilpatrick's proffer of probable cause involved much more.

It should also be noted that federal case law is not necessarily uniform in terms of the conclusions that courts have drawn about the relationship, if any, between pedophiles and child pornographers.  *See, e.g., United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994) ("common sense would indicate that a person who is sexually interested in children is likely to also be inclined, *i.e.*, predisposed, to order and receive child pornography"); *United States v. Murray*, Criminal No. 04-666, 2007 WL 2332484 at *5 (E.D. Pa. Aug. 13, 2007) ("numerous courts have recognized the strong link between pedophilic behavior and possession of child pornography) (citing cases).

Nevertheless, even if one accepts that pedophiles cannot generically and uniformly be classified as child pornographers, I do not agree that, under the circumstances here, the Defendant's avowed sexual interest in young boys and self-identified status as a "boylover" is meaningless to the probable cause analysis.  The Defendant is not merely an individual with an abstract or hypothetical sexual preference for pre-pubescent boys.  Rather, as the affidavit makes clear, the Defendant has consistently acted on his sexual proclivities to the point that he actively networks with other boylovers and pedophiles, both on-line and in person, even to the extent of traveling to out-of-town boylover gatherings.  During at least one of these gatherings, a child was sexually molested and the event was filmed; the Defendant was believed to have obtained a copy of the film from a reliable source who was not only present at the same gathering but responsible for organizing it.  The two informants with whom the Defendant has networked in the past, namely Frank and Pidel, are not merely individuals with a philosophical "boylover" sympathies; they are dangerous individuals who have sexually molested children and produced and distributed child pornography to others.  Furthermore, the group of "boylovers" with which Frank and Pidel were affiliated were actively involved in the sexual exploitation of children, which included trips or

33

gatherings where young boys were sexually molested.  Pidel, according to the affidavit, specifically identified the Defendant as someone with whom he had had contact regarding the sexual molestation of children and the trading of child pornography.  The affidavit also shows that the Defendant actively uses his computer not merely to network with other pedophiles (in fora dedicated to the topic of boylove), but also to produce and facilitate the sharing of adult pornography.  And of no small moment is the fact that the Defendant has indulged his sexual preference to the point of molesting his young relative and discussing the details of that information in on-line chats with Pidel.  In sum, the totality of circumstances presented in the affidavit shows not only that the Defendant is willing to act on his sexual proclivities in the most egregious ways, but also that, in the Defendant's circle of "boylover" associates, there is a strong correlation between the sexual molestation of children and the circulation of child pornography.

I must also disagree with the Defendant's suggestion that the entirety of information obtained by Detective Lynn concerning the GGN site was benign insofar as the Defendant's involvement is concerned.  Though it may be fair to assume that the Defendant was not a member of the site as of July 10, 2006, when Detective Lynn conducted her investigation, this fact does not necessarily compel an inference that the Defendant was completely unaware of the site's photo content.  The fact that the Defendant posted a link to GGN constitutes, in effect, an endorsement of the site, which in turn suggests some familiarity with the website's content.  Moreover, even assuming the Defendant was not a member of GGN as of July 10, 2006, it does not necessarily follow that could never have accessed the site's photo content, because nonmembership as of that date does not rule out the possibility that the Defendant may have been a member of GGN in the past or that he might have gained familiarity with the site or obtained copies of its contents through another member.  In fact, it is counter-intuitive to believe that the Defendant would post a link to a website without knowledge of its contents.

It is also noteworthy that the Defendant posted the link together with the

34

website's description:  *i.e.*, "[f]or the appreciation of nerdy and geeky boys[,] [e]specially wearers of glasses and read haired boys."  I cannot agree with the Defendant's suggestion that this descriptive language is completely benign and lacking in any probative value.  Rather, the pointed reference to "boys" suggests subject matter pertaining to youthful males, and the reference in particular to "nerdy" or "geeky" boys, especially "wearers of glasses and red haired boys," suggests content relating to a particular fetish; as such, the description conveys an unmistakable, if subtle, sexual undertone.  While the Defendant's GGN link, standing alone, likely falls short of establishing probable cause for the search of his computer, the information cannot be viewed in isolation.  When added to the entirety of facts set forth in Agent Kilpatrick's affidavit, the GGN link adds further support to the notion that the Defendant maintains an interest in child pornography and is facilitating the circulation of such material to other individuals of like mind.

     The Defendant also attacks as facially insufficient the affidavit's representation that Detective Lynn downloaded various images from the GGN site which she felt "depicted minors engaged in a lascivious display of their genitalia."  (Kilpatrick Affidavit at ¶ 44.)  According to the Defendant, the affidavit was manifestly insufficient to establish probable cause due to the fact that Agent Kilpatrick neither described the content of the supposedly "lascivious" images nor appended them to the search warrant affidavit for the Magistrate Judge's review.  The Defendant cites *United States v. Brunette*, 256 F.3d 14, 17-18 (1st Cir. 2001) and *United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) as establishing that, at least in the context of alleged child pornography that is based on the "lascivious exhibition"[12] of a minor's genitalia, an

---

[12] The term "lascivious exhibition" has significance because of the particular charges at issue in this case.  The investigation in this case concerned suspected violations of 18 U.S.C. § 2252 (entitled "Certain activities relating to material involving the sexual exploitation of minors") and § 2252A (entitled "Certain activities relating to material constituting or containing child pornography").  As it relates to this case, § 2252 prohibits the knowing receipt, distribution or possession of any visual depiction that has

issuing magistrate judge cannot make a determination whether probable cause exists without either viewing the subject image or receiving a detailed, factual description of it.

The Third Circuit has observed that, "[w]hatever the exact parameters of 'lascivious exhibition,' we find it less readily discernable than the other, more concrete types of sexually explicit conduct" set forth in § 2256(2)(A).  *United States v. Villard*, 885 F.2d 117 (3d Cir. 1989).  In the context of judging the sufficiency of the government's evidence on a motion for judgment of acquittal, the *Villard* court concluded that a "lascivious exhibition" must involve more than a depiction of mere nudity and, to help provide greater clarity, it adopted the six-factor test established in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986).  The test involves consideration of the following factors, not all of which must be present in order to constitute a "lascivious exhibition":

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

---

been mailed, shipped or transported in interstate commerce or over the computer if the visual depiction involves the actual use of a minor engaging in "sexually explicit conduct" and the depiction is of such conduct.  18 U.S.C. § 2252(a)(2) and (a)(4)(B). Section 2252A prohibits, in relevant part, the knowing receipt, distribution, or possession of "child pornography" that has been mailed, shipped, or transported in interstate commerce by any means, including by computer, 18 U.S.C. § 2252A(a)(2) and (a)(5)(B), and "child pornography" is defined in terms of depicting "sexually explicit conduct."  *Id.* at § 2256(8).

> "Sexually explicit conduct," in turn, is defined as "actual or simulated –
>
> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2)(A).

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Villard*, 885 F.2d at 122.  Applying this test, the court concluded that the government had presented insufficient evidence to support the defendant's conviction for transporting child pornography across state lines, where the evidence consisted solely of a witness's description of an image depicting a fully nude 14 or 15 year-old boy from head to knee level lying on a bed or mattress with a "three quarters erection."  *See id*. at 123-26.

Of course, *Villard* made no pronouncements about the level of detail required for purposes of establishing probable cause to conduct a search for child pornography, and *Brunette* and *Battershell* obviously do not represent binding law in the Third Circuit. Nevertheless, assuming only for the sake of argument that those cases do correctly summarize the law of this circuit, and further assuming, therefore, that Agent Kilpatrick's failure to attach the "lascivious" images to his affidavit or to describe their contents in greater detail rendered Detective Lynn's "lascivious" assessment meaningless to the reviewing Magistrate Judge, the affidavit still established the following facts:

* the Defendant is a "boylover" and pedophile with a self-proclaimed sexual interest in boys under the age of 14 years;

* the Defendant has acted on his sexual preference to the point that he has (a) traveled out of town to attend organized meetings with other "boylovers"; (b) networked with other pedophiles over the internet in fora dedicated to the topic of "boylove"; and (c) molested his young cousin on an on-going basis;

* the Defendant has been known to associate with Frank and Pidel, who were fellow "boylovers" actively engaged in the sexual exploitation of children; in addition to themselves sexually abusing young males, both Frank and Pidel were involved in arranging "boylover" gatherings aimed at establishing relationships

37

with boys and/or which involved the sexual abuse of boys; in addition, both Frank and Pidel were involved in the production, receipt and/or distribution of child pornography and received substantial federal sentences for such crimes;

\*      Pidel's cooperation has led to the arrest of at least two of his associates who admitted to or were found to be in possession of child pornography; one of these individuals acknowledged being involved in a boylover organization in which he allowed other men to engage his own son in sexual activity;

\*      the Defendant was believed by Frank, a credible source and fellow boylover, to have acquired a copy of a videotape depicting the sexual abuse of a young boy, which was made approximately five years earlier at a boylover meeting at which both the Defendant and Frank were present;

\*      the Defendant has reportedly had contact with Pidel through the internet "concerning the trading of child pornography and the molestation of children";

\*      the Defendant is known to have used his own computer to make adult pornography available to others on-line through his Yahoo group site;

\*      the Defendant has also used his own "weatherboy.org" website to offer pornographic depictions of himself (including "special interest photographs") on a for-sale basis, and advertises this website as depicting a "young boy who jerks off on camera and webcam as well as nude photos" (even though the Defendant is a grown adult male);

\*      the Defendant posted on his Yahoo group site a link to another site which is described as being "[f]or the appreciation of nerdy and geeky boys[,] [e]specially wearers of glasses and red haired boys," and which provides to its members pornographic photo content, included among which are numerous pictures of suspected minor males exposing their genitalia;

\*      individuals who are interested in child pornography tend to retain, and rarely dispose of, their collections of sexually explicit materials;

\*      individuals who are interest in child pornography tend to correspond with others who share their same interest;

\*      the communication structure provided by computers and the availability of the internet is ideal for child pornographers and has become the foundation of commerce between child pornographers; and

\*      the computer's ability to store images in digital form makes it an ideal repository for pornography.

As I have previously noted, "[p]robable cause is determined by a 'totality-of-the-circumstances analysis,' under which a magistrate judge must 'make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams,* 124 F.3d 411, 420 (3d

Cir.1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Furthermore, this

Court's job, on review, is not to determine probable cause anew, but "simply to ensure

that the magistrate had a 'substantial basis for ... concluding' that probable cause

existed."  *See United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (quoting

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  I find that Agent Kilpatrick's affidavit,

when read in a holistic, practical and non-technical manner, provides a substantial basis

for the Magistrate Judge's determination that there was probable cause to believe that

material violating 18 U.S.C. §§ 2252 or 2252A would be found on the Defendant's

computer.[13]

B.

Even where there is no substantial basis for a finding of probable cause, the

"extreme sanction of exclusion" does not necessarily apply because the officer's

objective good faith may save the search.  *United States v. Sarraga-Solana,* 263 Fed.

Appx. 277, 230, 2008 WL 227866 at **2 (3d Cir. Jan. 29, 2008) (citing *United States v.

Leon*, 468 U.S. 897, 926 (1984)).  As the Supreme Court explained in *United States v.

Leon*, 468 U.S. 897 (1984), "even assuming that the [exclusionary] rule effectively

deters some police misconduct and provides incentives for the law enforcement

profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot

be expected, and should not be applied, to deter objectively reasonable law

enforcement activity."  *Id*. at 918-19.

---

[13] My analysis assumes the inclusion in the affidavit of information which the
Defendant claims was wrongfully excluded.  *See United States v. Eberle*, 266 Fed.
Appx. 200, 205 (3d Cir. 2008) ("To determine whether an omission is material, 'we
excise the offending inaccuracies and insert the facts recklessly omitted, and then
determine whether or not the 'corrected' affidavit would establish probable cause.'")
(*quoting Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).  Even so, I find that the
affidavit provided a "substantial basis" for the Magistrate Judge's determination that
there was probable cause to allow the search of the Defendant's residence, including
his computer.  Because the information which was allegedly wrongfully omitted from
Agent Kilpatrick's affidavit is not material to a finding of probable cause, the
Defendant's *Franks* challenges fail on this basis as well.

39

Our circuit court of appeals has stated that the "test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *Leon*, 468 U.S. at 922 n.23). Although the existence of a warrant is ordinarily sufficient to demonstrate that the search was conducted in good faith, *Hodge*, 246 F.3d at 307-08 (citing *Leon*, 468 U.S. at 922; *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)), the Third Circuit has identified four situations where an officer's reliance on a warrant would be objectively unreasonable:

> (1) where the magistrate issues a warrant in reliance on an affidavit that is deliberately or recklessly false; (2) where a magistrate abandons his judicial role and fails to execute the warrant in a neutral and detached manner; (3) where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) where the warrant is so facially deficient that it does not particularize with any specificity the place to be searched or the things to be seized. Id. at 308 (internal citations omitted).

*Cancilla*, 280 Fed. Appx. at 237, \*\*2 (citing *Hodge,* 246 F.3d at 308).

Here, the Defendant has made the claim that the search warrant was issued in reliance on an affidavit that was deliberately or recklessly false by virtue of certain omitted information. However, for the reasons I have stated, I find that the challenged omissions do not warrant a *Franks* hearing in that there has been no substantial preliminary showing either that the omissions created a false impression material to a finding of probable cause or that they were made with at least a reckless disregard for the truth.

The Defendant has also argued that the affidavit was so clearly lacking in indicia of probable cause that federal law enforcement agents could not have reasonably relied on the warrant as being a valid authorization of the search. I find this challenge unavailing on the present record and conclude, on the contrary, that, even if the warrant failed to establish probable cause to believe that the contraband material would be

found in the Defendant's home and on his computer, the law enforcement officers'
belief in the validity of the warrant was not objectively unreasonable.

This is true notwithstanding the decisions in *Brunette* and *Battershell*, which
concern only one aspect of the probable cause calculus – *i.e.,* whether the Magistrate
Judge had sufficient information to make a determination that the images copied from
the GGN website by Detective Lynn depicted the "lascivious exhibition" of the minor
subjects' genitalia and (to the extent such a determination was necessary to a finding of
probable cause) whether law enforcement officers could have reasonably relied on the
Magistrate Judge's endorsement of those pictures as "lascivious" subject matter.

Assuming for present purposes that a judicial determination of "lascivious"
content was essential for a finding of probable cause, I conclude that reasonably well
trained law enforcement officers could have relied on the Magistrate Judge's
determination that the GGN photos depicted the "lascivious" exhibitions in violation of
the subject laws.  Defendant points to *Brunette* and *Battershell* as establishing clearly
settled law that the issuing magistrate cannot make a determination as to "lascivious"
content unless she either views the image or receives a detailed, factual description of
it.  It should be noted, however, that *Battershell* was decided on August 10, 2006, less
than one month before the search of Defendant's home was conducted.  *Brunette* was
decided by the First Circuit Court of Appeals in 2001, but I am unaware of any courts in
this circuit which recognized or applied either *Brunette* or *Battershell* prior to 2008.
*See, e.g., United States v. Christie*, 570 F. Supp. 2d 657, 689 (D.N.J. 2008); *United
States v. Diyn*, No. Crim. 3:2006-37, 2008 WL 2795942 (W.D. Pa. Jul. 18, 2008).
*Villard*, which is also relied on by the Defendant, does not address the adequacy of
descriptive language in an affidavit of probable cause, but rather concerns the issue
whether the government presented sufficient evidence to sustain a conviction for the
charge of transporting child pornography across state lines – a much higher standard of
proof than that with which we are presently concerned.

Furthermore, the rules articulated in *Battershell* and *Brunette* are not necessarily

41

viewed as well-settled law by the courts of other circuits.  One district court has interpreted *Brunette* as "prohibit[ing] the issuance of a search warrant for child pornography without an independent review by the judge of the images used to establish probable cause or without a minutely detailed (read lurid) description of those images by the police officer."  *United States v. Grant*, 434 F. Supp. 2d 735, 746 (D. Neb. 2006).  The *Grant* court went on to reject *Brunette* on the ground that it conflicted with controlling circuit law, and it cited *United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002), for the controlling rule that an affidavit is "sufficient when it recite[s] the language of the statute, such as 'graphic files depicting minors engaged in sexually explicit conduct.'"  (Here, the search warrant affidavit's description of the images copied from GGN tracked the statutory "lascivious" language that is used to describe "sexually explicit conduct"[14] which, in turn, is one term used to describe "child pornography."  *See* 18 U.S.C. § 2256(8).)  A different district court from the Second Circuit, commenting on the rule of *Brunette* and *Battershell,* has observed that "the requirement that, in the lasciviousness context, law enforcement officials append to the warrant affidavit, or include therein a reasonably detailed description of, the allegedly proscribed material is relatively new and, at least within the Second Circuit, "unclear."  *United States v. Genin*, 594 F. Supp. 2d 412, 426 (S.D.N.Y. 2009) (upholding search on good faith grounds where affidavit contained agent's bare conclusion that videos contained "child pornography") (citing *United States v. Jasorka*, 153 F.3d 58 (2d Cir. 1998)).  *See also United States v. Simpson*, 152 F.3d 1241, 1246-47 (10th Cir. 1998) (where affidavit neither presented to the issuing judge copies of unlawful materials believed to be in the defendant's possession, nor described in detail the content of those materials, but merely informed the judge that the material was "child pornography," the information in affidavit was nevertheless sufficient for the judge to find probable cause for the search).

It is true that law enforcement officers are presumed to be reasonably well

---

[14] *See* 18 U.S.C. § 2256(2)(A).

42

trained in the law.  However, I am not persuaded that the rule of *Brunette* and

*Battershell* does, in fact, represent the clearly established law of this Circuit.  Such a

view, in my opinion, is not only questionable, but holds law enforcement officers to an

excessive standard.  Accordingly, the holdings of those cases would not, in my view,

have precluded the officers in this case from relying on the search warrant's validity in

objective good faith.  Even if probable cause did not exist to believe that a search of the

Defendant's computer would yield evidence of child pornography, I find that it is a close

enough call that "reasonable minds can differ" on the issue, s*ee Falso*, 544 F.3d at 128-

29, and therefore, reliance on the Magistrate Judge's probable cause determination

was objectively reasonable.

Finally, I am cognizant of the Supreme Court's most recent admonition in *Herring

v. United States*, — U.S. — , 129 S. Ct. 695 (2009), that, to justify application of the

exclusionary rule, "the benefits of deterrence must outweigh the costs."  *Id*. at 700.  The

Court explained in *Herring* that

> [t]he principal cost of applying the rule is, of course, letting guilty and
> possibly dangerous defendants go free-something that "offends basic
> concepts of the criminal justice system."  *Leon, supra*, at 908, 104 S.Ct.
> 3405.  "[T]he rule's costly toll upon truth-seeking and law enforcement
> objectives presents a high obstacle for those urging [its] application."
> *Scott, supra*, at 364-365, 118 S.Ct. 2014 (internal quotation marks
> omitted); *see also United States v. Havens*, 446 U.S. 620, 626-627, 100
> S.Ct. 1912, 64 L.Ed.2d 559 (1980); *United States v. Payner*, 447 U.S.
> 727, 734, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

*Id*. at 701.  "To trigger the exclusionary rule," the Court wrote, police conduct must be

sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable

that such deterrence is worth the price paid by the justice system."  *Id*. at 702.  Thus,

the rule is best suited to deter "deliberate, reckless, or grossly negligent conduct, or in

some circumstances recurring or systemic negligence."  *Id*.

Here, to the extent probable cause could be found lacking in Agent Kilpatrick's

affidavit, the degree of police misconduct involved fails to rise to the level necessary to

justify application of the exclusionary rule.  Nor, under the circumstances, could it be

said that the benefits which would result from the deterrence of such misconduct would outweigh the costs.  Consequently, I find that the good faith exception to the exclusionary rule would apply even if Agent Kilpatrick's affidavit failed to provide a substantial basis for the Magistrate Judge's probable cause determination.

### III.  CONCLUSION

Based upon the foregoing, which constitutes this Court's findings of fact and conclusions of law, the Defendant's motion to suppress evidence will be denied.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICAN        )
                                 )
            v.                   )        1:07-cr-43-SJM-1
                                 )
DUSTAN DENNINGTON                )


**O R D E R**


        AND NOW, *to wit*, this 21st day of August, 2009, based upon the reasons set
forth in the accompanying Memorandum Opinion, which constitutes this Court's findings
of fact and conclusions of law,

        IT IS ORDERED that the Defendant's Motion to Suppress [62] be, and hereby is,
DENIED.



                                        s/    Sean J. McLaughlin

                                        Sean J. McLaughlin
                                        United States District Judge


cm:    All counsel of record.


45